CAMPBELL v. LINDER.

1. MORTGAGE—FINDING OF FACT, that deed was intended as a mortgage, affirmed.
2. EXECUTORS AND ADMINISTRATORS—DEVISE—DEBITOR AND CREDITOR.—An executor can do nothing to impair a devise, but may extend indulgence to a debtor.
3. LACHES.—Under the facts in this case, the plaintiff is not barred by laches in redeeming the land.
4. USURY—PRACTICE—PLEADINGS.—Usury will not be considered, unless it is set up and claimed in the pleadings.

Before WITHERSPOON, J., Spartanburg, September, 1896. Modified.

Action by T. J. Campbell against R. E. Linder, M. L. Linder and M. V. Smith, executor and executrix of Lee Linder, and Edna Littlejohn, to have deed declared mortgage. Judgment for plaintiff. Defendant, Edna Littlejohn, appeals.

*Messrs. Bomar & Simpson,* for appellant, cite: *Laches:* 7 Rich. Eq., 260; 4 Rich. Eq., 366; 5 Rich. Eq., 370. *Usury:* 45 S. C., 611.

*Messrs. Duncan & Sanders,* contra, cite: *Once a mortgage always a mortgage:* McM. Eq., 13. *Usury:* 16 Stat., 325; Gen. Stat., 1288; 18 Stat., 35; 11 S. C., 412; 27 S. C., 119; 29 S. C., 131.

July 22, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE. This action was commenced after December 8th, 1894, and had for its object that the Court would adjudge the deed executed by the plaintiff, T. J. Campbell, to one Lee Linder, now deceased, on the 16th December, 1882, for about 193 acres of land, accurately described by metes and bounds in the complaint, which deed upon its face appears to be an absolute conveyance of said land, to be a mortgage executed by the plaintiff to said

Lee Linder to secure a debt of $658.65, with interest thereon from 16th December, 1882, at the rate of ten per cent. per annum, but which interest had been paid up to December, 1893, upon the payment of the plaintiff of said sum of $658.65, and interest thereon, into Court. Of course, the usual relief incident to such a conclusion was also asked for. The defendants answered, denying that such deed was aught else than what it purported to be on its face—an absolute conveyance of the land; that while it was true that the testator, Lee Linder, in his lifetime had given an option, so to speak, to said Campbell to purchase said lands, that such option by its terms had long since expired, and that said Lee Linder had devised said tract of land to his granddaughter, Edna Littlejohn, for life, and the reversion thereof to her children.

Under pleadings much testimony was taken, and all came on to be heard by his Honor, Judge Witherspoon, who pronounced this decree: "This case came on to be heard upon the testimony taken and reported by the master and the arguments of counsel. The plaintiff seeks to have a deed of conveyance of the McArthur tract of 193½ acres of land by plaintiff to Lee Linder, dated December 16, 1882, adjudged by the Court to be a mortgage. Lee Linder died in 1891, leaving the defendants first above named in the title to this action as executor and executrix of his will. In the fifth clause of his will he devised the tract of 193½ acres of his land to his grand-daughter, Edna Smith, for life, and after her death to her children. The defendant, Edna Easterly (now Littlejohn) is the grand-daughter named in the will as Edna Smith, and the infant defendant, Frank Easterly, was a child of the said Edna, who died pending this action. After the death of Lee Linder, the defendant, Edna Easterly, demanded of the plaintiff the possession of the land as devised under the will of Lee Linder. The plaintiff denies Edna Easterly's right to the possession of the land, and brings this action to have the deed from plaintiff to Lee Linder declared to be a mortgage.

The defendant, Edna Easterly, has married N. H. Little-john since the commencement. of this action.   The deed from plaintiff to Lee Linder, being absolute on its face, must be presumed to be what it purports to be.   Before the court of equity will adjudge said deed to be a mortgage, the plaintiff must show, by clear and convincing evidence, that such was the intention of the parties when the deed was executed and delivered to (3 Pom. Eq., sec. 1196,) Lee· Linder.  (*Arnold* v. *Mattison*, 5 Rich. Eq.)   The relation of debtor and creditor between the parties must be also shown when the deed was executed.   Whether a convey-ance be a sale or mortgage, must be determined by a con-sideration of the particular circumstances of each case, and the only safe criterion is the intention of the parties to be ascertained by considering their situation and the sur-rounding facts, as well as any written memorials of the transaction.   (Jones on Mort., sec. 258.)   What was the situation of the parties, and under what circumstances was the deed executed by the plaintiff to Lee Linder?   The death of Lee Linder has debarred the plaintiff from testi-mony as to any personal communications or transactions between himself and Linder with reference to the convey-ance under section 400 of the Code.   I find from the evi-dence, as matter of fact, that the land in question formerly belonged to S. S. Ross and Joseph Walker, and is known as a part of the McArthur land.   That the plaintiff, during the year 1879, contracted with S. S. Ross for the purchase of the land at $4 per acre.   That plaintiff took possession of the land in January, 1880, where he was living and cul-tivating the land which he conveyed, two years afterwards, to Lee Linder.   That while plaintiff was in possession of the land under his contract to purchase from Ross and Walker, the plaintiff and Lee Linder entered into a written agreement, of which the following is a copy: 'State of South Carolina, Spartanburg County.   Agreement between Lee Linder and Rev. T. J. Campbell.   The said Lee Linder agrees, on his part, that if he succeeds in getting title to

the land, the McArthur land, containing 193½ acres, from
Capt. S. S. Ross and Col. Joseph Walker, that he will let
the said Rev. T. J. Campbell and his sons have a chance to
redeem it within three years, with ten per cent. per annum
interest, with taxes paid annually every December 1, but
no third person is to advance the money and take the trade
from the said Lee Linder.    The said Campbell, on his part,
agrees to comply to the above specifications of agreement on
his part.  Signed: Lee Linder. ·Attest: T. J. Campbell, James
Fowler, Nannie Smith.'    Lee Linder, in his own handwrit-
ing, indorsed upon this paper, extending the agreement
from time to time up to the 9th day of December, 1891,
and the defendant, Mary Linder, in writing, extended the
agreement to the 9th December, 1892.    Two days after this
agreement was entered into, to wit: on January 30th, 1882,
Ross and Walker conveyed the land by deed to the plain-
tiff for the consideration of $858.55, as expressed in the
deed.    The plaintiff testifies that Lee Linder was present
when said deed was delivered to plaintiff.    On the 15th
day of December, 1882, plaintiff conveyed the land to Lee
Linder for the consideration of $658.55, being $200 less
than the consideration in the deed to plaintiff.    Both deeds
were recorded.    These three instruments all relate to the
McArthur land, which, under the agreement of January
28th, 1882, Lee Linder had undertaken to procure from
Ross and Walker for the plaintiff's benefit, and should be
construed together, in the light of the surrounding circum-
stances, as well as the subsequent conduct of the parties,
in ascertaining the intention of the parties.    It would be
difficult to give a reasonably satisfactory construction of the
agreement considered alone.    The agreement on its face,
the subsequent acknowledgment of Linder in writing at
different times of the receipt of money from plaintiff for
interest, and the payment of taxes on the land, and the de-
clarations of Linder to the witnesses, Blanton, Hawkins, and
Davenport, satisfy me that plaintiff was indebted to Linder
when he conveyed the land to him.    There is no evidence

tending to show any other transaction between the parties. The agreement was entered into before plaintiff obtained Ross and Walker's title, and, hence, the parties could not specify in the agreement the amount of the debt to Linder upon which the plaintiff agreed to pay Linder the ten per cent. interest. The provision in the agreement that the plaintiff would also pay the taxes, tends to show the plaintiff became indebted to Linder on account of his land transaction. I am satisfied by the evidence, and find as a matter of fact, that the debt upon which plaintiff was to pay interest, under the agreement, was the amount that Linder would have to pay for plaintiff in getting title from Ross and Walker. What did Linder advance for the plaintiff to secure the title of Ross and Walker? The plaintiff testifies that he paid, in 1879, the sum of $200 in part of the purchase money. This payment was due to Ross and Walker, and was made two years before the agreement between plaintiff and Linder. I do not think this testimony is obnoxious to sec. 400 of the Code, and the plaintiff is corroborated by the two deeds, which show a difference of $200 in the consideration as expressed in the deeds. There is no evidence to show that either deed does not express the true consideration. This payment of $200 of the purchase money, under plaintiff's contract to buy the land from Ross and Walker, may be the reason why Linder could not procure title direct from Ross and Walker, and had to accept the title through the plaintiff. I find, as a matter of fact, that plaintiff paid Ross and Walker $200, under his contract to buy the land. Plaintiff was not permitted to testify who paid the balance of the purchase money to Ross and Walker. Under the agreement, Linder was to procure the title from Ross and Walker and allow plaintiff to redeem the land upon the conditions expressed in the agreement. I find, as a matter of fact, that·Linder advanced for plaintiff $658.55, to pay off this balance of the purchase money to Ross and Walker, and that this is the amount of the debt to Linder upon which plaintiff is

to pay interest and taxes on the land, under the agreement between the parties. Did the parties intend that the conveyance by plaintiff to Linder should stand as security for the amount so advanced, or was the said conveyance intended as conditional sale? The plaintiff produces receipts for the payment of taxes on the land assessed in his name for thirteen years. The land was assessed in 1882 at $980, which, with the interest and taxes paid annually, would furnish security for the amount advanced. Under this agreement, Linder was to get a higher rate of interest on his money than the law then allowed. The fact that Linder extended the time limit under the agreement up to the date of his death, and allowed plaintiff to remain in the undisturbed possession of the land as long as he lived, are circumstances tending to show that Linder regarded the land as security for the amount advanced by him for plaintiff. I find, as a matter of fact, that the parties intended, when the deed was executed to Linder, that the land should stand as a security for plaintiff's indebtedness to Linder. When Lee Linder made his will devising the land in dispute, he may have thought that plaintiff had forfeited his right to redeem the land under the agreement, or he may have concluded that plaintiff would never be able to pay him the money he had advanced on the security of the land. What was originally intended as a security should never be turned into an absolute conveyance, even if it should be expressly stipulated otherwise. It is equally incompetent to stipulate from what source the fund to redeem shall be derived. The mortgagee is only considered as a creditor, and all that he is entitled to is his money (Walling v. Aiken, McMullan's Eq., 13). The plaintiff admits in his complaint that he owes $658.55, secured by deed to Lee Linder, and has deposited with his attorneys, Duncan & Sanders, $670 to be applied to said debt. The time for the payment by plaintiff of his debts has been extended by Lee Linder in his lifetime, and by one of his executors since his death, to the 9th December, 1892, and

the plaintiff should not be deprived of his right to redeem the land by lapse of time. The rate of interest to be paid by plaintiff was fixed under the agreement at ten per cent., but this part of the agreement cannot be enforced, as the statutes then in force prohibits the charging of more than seven per cent. as interest. I conclude, as matter of law, that the deed of the plaintiff conveying the land in dispute to Lee Linder, dated December 16th, 1882, should be regarded in equity as a mortgage, and that plaintiff should be permitted to redeem the land as conveyed within such time as the Court may prescribe, upon the payment to the executors of Lee Linder of the sum of $658.55, with interest at seven per cent. on said sum, payable annually, from January 30th, 1882, together with any taxes that Lee Linder in his lifetime, or his executors have paid on said land since that date. The amount of said indebtedness cannot be accurately ascertained from the evidence before the Court. It is, therefore, ordered, that it be referred to the master for Spartanburg County to take any additional testimony that may be offered, after giving notice of reference, and to ascertain and report to this Court without delay the amount due by plaintiff and secured by said deed to the estate of Lee Linder. After the long indulgence granted to plaintiff by Lee Linder, I conclude that the plaintiff should be required to pay all the costs of this action, in addition to the debt and interest herein adjudged to be due by the plaintiff, to be ascertained by the master, and it is so ordered. Upon the coming in of the master's report as to the amount due by the plaintiff to the estate of Lee Linder, as herein ordered, any of the parties to the action may apply at the foot of this decree for such further order as may be deemed proper to carry out this decree, or to adjust any equities between the defendant, Edna Littlejohn, and the estate of Lee Linder. September 5th, 1896. I. D. Witherspoon, presiding Judge."

The defendant, Edna Littlejohn, appealed from this decree upon ten grounds. We will consider them in groups,

and will first dispose of the 1st, 2d, 3d, and 4th, which are as follows: "1. That the Circuit Judge erred in holding that the contract between the plaintiff and Lee Linder, the devisor of this appellant, as to the matters involved in this litigation, was that plaintiff was to make, and did make, to the said Lee Linder, a deed to the land described in the complaint, which was intended as a mortgage, and that he is now entitled to pay the mortgage debt and redeem the land. 2. That the Circuit Judge erred in not holding from the testimony and all the circumstances in this case, that no deed to the said land was ever delivered to the plaintiff, and that he never at any time acquired any title thereto; but, on the contrary, the title to said land went from Ross and Walker to Lee Linder, who had previously agreed to buy the same from them, and resell to the plaintiff. 3. That the Circuit Judge erred in finding that Ross and Walker conveyed the land in dispute to plaintiff on January 30th, 1882, and that plaintiff held the same nearly a year, and then conveyed it to Linder; when the proof shows that no title even at any time went into plaintiff, and that Walker did not sign the deed until the 15th December, 1882, or thereafter, and that the only execution of title to plaintiff was by Ross in escrow. 4. That the Circuit Judge erred in not holding that the transactions between plaintiff and Linder were not the execution of a deed intended as a mortgage, but an agreement by Linder to secure the title to the said land and sell the same to the plaintiff, and in not holding that the only reason why the said title did not go direct from Ross and Walker to Linder, was the refusal of Ross to have and dealings with Linder." We may remark in the outset that the decree of the Circuit Judge is so clear in the matter of the deed operating as a mortgage, that we have taken pleasure in reproducing it in its entirety. It is quite true, as appellant says, that only Ross executed the deed to the plaintiff on 30th January, 1882, and that Walker executed the same as late as the 15th or 16th day of December, 1882, but this correction as

to dates in nowise weakens the reasoning of the Circuit Judge as to the effect of the deed in question. Appellant does not attempt to gainsay the fact that the deed of Ross and Walker was made to the plaintiff, and in this form was put on record by Lee Linder, and, too, that the consideration named in this deed was the sum of $858.55. The plaintiff was in possession of this land from 30th January, 1882, to 16th December, 1882, as he had been from 1st January, 1879, to 30th January, 1882. Lee Linder was never, *constructively*, in possession of this land until 16th December, 1882, when the plaintiff executed him a deed therefor. We agree with the Circuit Judge that the agreement between plaintiff and Linder, taken in connection with the two deeds, one from Ross and Walker to the plaintiff, and the other from plaintiff to Lee Linder, viewed and construed in the light of surrounding facts and circumstances, abundantly justify the conclusion that the deed to this land from the plaintiff to Linder, though on its face a deed absolute, was in fact but a mortgage. We will specify these or some of these circumstances: (a) Linder, under the proofs, never had any connection touching this land with Ross and Walker until after he had executed his agreement with the plaintiff to help him buy it. (b) The plaintiff had been in possession of Ross and Walker's land from 1st January, 1879, to 1882, under a contract to buy, and had paid more than one-fourth of the purchase money, to wit: $200, to Ross and Walker. (c) The plaintiff had executed to himself the deed from Ross and Walker, and then by deed conveyed the same to Lee Linder. (d) Lee Linder accepted this plaintiff's money for nearly nine years, "as interest," and no other debt was shown to exist between them than this $658.55. (e) The very agreement in law shows that the title to this land was in the plaintiff, and that plaintiff's deed to Lee Linder was only a mortgage; for, if not so, why shall the plaintiff be required to pay taxes on Lee Linder's land? A mortgagor holds the legal title—the mortgagee but the pledge of the land for his debt. The

12—50

mortgagor pays taxes on the lands because he owns them. (f) The parties, the plaintiff and Lee Linder, when in company of each other, never held out to the world that their relation the one to the other as to this land was anything but debtor and creditor. For the reasons so cogently presented by the Circuit Judge in his admirable decree, and with the views herein briefly presented by ourselves, we overrule these first four exceptions.

We will next consider the fifth exception, which is as follows: "5. The Circuit Judge erred in holding that the time for completion of the contract between plaintiff and Linder was extended by Linder's executors, and in not holding that they had no authority to grant any such extension."

We will remark in this connection, that if the relation of mortgager and mortgagee existed in the eyes of equity between the plaintiff and Lee Linder, then Lee Linder held a debt against the plaintiff. If Lee Linder left behind him, when he died, a debt due by the plaintiff, then it was in the power of his executors to grant an indulgence to his debtor. But, on the other hand, if the plaintiff, Campbell, has parted absolutely with his title by reason of his conveyance to Lee Linder, and Lee Linder was the owner, in his lifetime, and devised the same to Edna Smith, why, from that standpoint, of course, the executors of Lee Linder could not do any act, of legal effect, to impair that devise. We have already announced that we agree with the Circuit Judge that the only relation which the plaintiff bore to Lee Linder was that of a debtor. Therefore, we overrule this exception.

We will next consider the sixth exception, which is as follows: "6. The Circuit Judge erred in holding that plaintiff should not be deprived of his right to redeem the land in dispute by lapse of time, and in not holding that in any view of this case plaintiff is now barred by his laches and by the expiration of the time within which he could legally pay for and complete his purchase of the land, from bringing this action and recovering there-

in." Inasmuch as we have concurred in the conclusion of the Circuit Judge that the deed from the plaintiff to Lee Linder should be considered as a mortgage, and inasmuch as Lee Linder in his lifetime postponed the payment till 9th December, 1891, and inasmuch as the executors of his will postponed such payment until 9th December, 1892, and inasmuch as the defendant, Edna Littlejohn, through her then husband, J. B. Easterly, under a mistake as to their rights in the land, received this interest up to the 9th December, 1894, and inasmuch as this action was commenced by the plaintiff a few weeks thereafter, to redeem the land from the mortgage to Lee Linder, we cannot see that there was any error in holding that the plaintiff was not barred by *laches*, and by expiration of time. We suppose the appellant intended this exception to apply in the event we found that the deed was not a mortgage. The exception is overruled.

We will consider the seventh, eighth, and ninth exceptions together, which exceptions are as follows: "7. The Circuit Judge erred in holding that the contract between plaintiff and Linder was usurious, and that plaintiff should now be required to pay so much of the original sum due as may remain, after giving him credit thereon for the difference between seven per cent. annual interest and ten per cent. interest. 8. The Circuit Judge erred in not holding that even if the promise to pay ten per cent. for the first three years was usurious, the subsequent contracts extending the plaintiff's time to redeem were not so. 9. The Circuit Judge erred in holding that plaintiff's contract was usurious, and in giving him benefit of that fact, when there was no such point made in the case, and could not have been made in the pleadings as they stood." We are inclined to hold that the Circuit Judge was in error when he held that the contract between the plaintiff and Lee Linder, under their agreement as to the payment of ten per cent. interest, was usurious. Certainly, the plaintiff did not hint in his complaint that there was usury in such

contract. In the third paragraph of his complaint, plaintiff alleges that it was agreed between himself and Linder that he could "redeem said land by paying to the said Linder the said sum of $658.55, with interest thereon, according to the terms of said contract and agreement." Not another word occurs to suggest that ten per cent. was not the agreement that plaintiff wished to be enforced under his present complaint. Usury, in actions like the present, should be pleaded, in order that the other parties to the action may be prepared to meet such an issue. It is true, the act of the legislature of our State allowing ten per cent. interest to be charged was not enacted until a few days after the contract between plaintiff and Linder went into effect; the act in question was approved 21st December, 1882 (see XVIII. Stat. at Large, 35). The interest from 9th December, 1882, to 1885 has long since been paid by the plaintiff, and he could not recover any excess *at law* if he sued for it. In equity the law is followed. After 1885, the plaintiff will be esteemed to have contracted to pay the interest at ten per cent., by having solicited the said Lee Linder to extend the contract which called for ten per cent. interest. *Loan & Exchange Bank* v. *Miller*, 39 S. C., 175, also *Witte* v. *Weinberg*, 37 S. C., 579, are apt illustrations of the fact that, in the matter of usury, when set up in the pleadings, courts will scrutinize the papers connected with the transactions, to discover if anything has been done or written by the person charging usury to ratify such contract. But, strictly speaking, these latter views are not necessary, for the plaintiff must stand by the case as made by his pleadings. We hold, therefore, that the Circuit Judge was in error in so much of his decree as held that there was usury. We must hold, also, that the interest and taxes have been paid by the plaintiff from 9th December, 1882, up to 9th December, 1894, and that the Circuit decree must be so modified that no reference to the master is necessary, so far as the plaintiff is concerned; all the relief sought by him and to which he is entitled is to pay into Court for the

executors the sum of $658.55, with interest thereon from the 9th day of December, 1894, at the rate of ten per cent. per annum up to the date of the decree, and thereafter interest on same principal, $658.55, and the interest at ten per cent. from 9th December, 1884, to date of decree, at the rate of seven per cent. So much of the decree, as allows the equities of Mrs. Edna Littlejohn and the estate of Lee Linder to be adjusted at the reference ordered to the master for that purpose, will stand.

It is the judgment of this Court, that the judgment of the Circuit Court be modified as herein required and in all other respects affirmed, and that the action be remitted to the Circuit Court to enforce the decree as modified.